UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KAY DAWSON                                                                       PLAINTIFF

v.                                               CIVIL ACTION NO. 3:13CV-1024-S

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT           DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on cross-motions for partial summary judgment. This action arose from an accident between a motor vehicle driven by non-party Kevin Newton and a Jefferson County, Kentucky, school bus carrying fifty (50) elementary school students. The accident occurred on September 28, 2012. It is unclear to the court exactly how many of the fifty children suffered injuries in the collision, but Newton's liability insurance carrier, Progressive, represented that it had made offers of settlement to approximately thirty-five of approximately fifty potential claimants as of June 10, 2013. DN 11-4.

The plaintiff, Kay Dawson, on behalf of her minor child, D.M., received basic reparations ("PIP") benefits in the amount of $12,443.25. Dawson demanded "policy limits." Newton's policy had a $50,000 per person and $100,000 per occurrence liability limit. Adam Luhrs in Progressive's claims department indicated that it was his "intention to exhaust the $100,000.00 in available coverage trying to resolve these claims," but he "had not yet offered the entire $100,000.00..." DN 11-4. He concluded that "For my purposes, I can state that it appears that the Newton's policy limits are fully exposed, given the nature and number of claims being made against those limits." DN 11-4.

In the intervening seven months from Luhrs' June 10, 2013 letter to the filing of the cross-motions for summary judgment, the underlying information was not supplemented. It has not been supplemented to date. Two Claim Information letters from Progressive, filed in support of her summary judgment motion, are the sole pieces of evidence of record concerning the settlement of any of the claims by the liability carrier. They were both authored by Luhrs on June 10, 2013 and contain similar material, with the exception of the settlement amounts. Diamond Macklin settled for $5,000.00 and Tania Ross settled for $1,500.00. DN 11-4.

Dawson settled with Progressive for $5,000, and now seeks underinsured motorist benefits from defendant Travelers Indemnity Company of Connecticut ("Travelers"), the provider of underinsured motorist ("UIM") coverage to the Jefferson County Board of Education ("JCBE") for its buses. It appears that JCBE's policy in force at the time of the accident provides $1,000,000 of UIM coverage for bodily injury for "each accident." DN 10-2, p. 16.

KRS 304.39-320 of the Kentucky Motor Vehicle Reparations Act ("MVRA") provides that

> Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

KRS 304.39-320(2).

KRS 304.39-320(5) states, in pertinent part, that:

> The underinsured motorist insurer is entitled to a credit against total damages in the amount of the limits of the underinsured motorist's liability policies in all cases to which this section applies, even if the settlement with the underinsured motorist...is for less than the underinsured motorist's full policy limits.

The UIM endorsement in the Travelers policy tracks the KRS provisions. In paragraph 5 of Section D, the policy states that the insured's total damages will be reduced "by any amount available to that insured under any liability bonds or policies applicable to the underinsured motor vehicle that such insured did not recover as a result of the settlement between that insured and the insurer of an underinsured motor vehicle."

It is beyond doubt that KRS 304.39-320(5) applies to create a threshold for recovery of UIM benefits of amounts which exceed the limits of the tortfeasor's liability policy. The provision is crystal clear in its meaning and application to a claimant's UIM claim with an excess carrier.

In this instance, the statute establishes that Travelers is entitled to a credit against Dawson's total damages in the amount of $50,000, the Progressive per person policy limit for the accident, despite the fact that she settled her claim with Progressive for $5.000.00.[1] The result is that Dawson can recover a sum from Travelers for her actual damages to the extent they exceed $62,443.25. The portion of the $50,000.00 available under the $50,000.00 per person limit but unrealized in settlement (referred to in many cases as "the gap") does not become the responsibility of the underinsured motorist insurer. As states in *Progressive Max Insurance v. Jamison*, 431 S.W.3d 452 (Ky.App. 2013),

> KRS 304.39-320(5)'s unambiguous language also makes clear that the injured party, not that injured party's UIM carrier, bears the burden of any settlement below the tortfeasor's liability policy limits. At first blush, this result may appear inequitable to the injured party. A closer look at the rationale underlying UIM benefits reveals that this is not the case.
>
> "[T]he purpose and intent of the [underinsured motorist] statute is to treat the insured victim as if the tortfeasor is insured[.]" *Robertson v. Vinson*, 58 S.W.3d 432, 434 (Ky. 2001)(citation omitted). Without question, "[t]he tortfeasor's liability insurance

---

[1] Travelers is also entitled to a credit for the $12,443.25 Dawson received in PIP benefits. There is apparently no dispute that Travelers ins entitled to deduct this amount.

- 3 -

is the primary coverage, and the UIM insurance is the secondary or excess coverage[.]" *Samples*, 192 S.W.3d at 315. It logically follows, then, that the injured party must exhaust the tortfeasor's liability insurance before turning to its own carrier for compensation. If the injured party chooses to settle for less than the tortfeasor's policy limits, he does so at his own risk, for KRS 304.39-320(2) and (5) are clear that the nature and purpose of UIM benefits is to compensate the injured party only for those damages that exceed the limits of the tortfeasor's liability insurance policy.

The Travelers UIM endorsement employs a "damages less limits"-type of UIM coverage, as does the Kentucky statute, where UIM benefits kick in where the tortfeasor's liability limits leave off. Kentucky courts have found that it is no inequity in the UIM claimant being required to bear the loss for any gap between the liability limits and her below-limits settlement with the tortfeasor. *Jamison, supra.*

The cross-motions for partial summary judgment address the discrete issue concerning the application of the "damages less limits" provision, KRS 304.39-320(5), to claims arising from multi-victim accidents. This apparently presents a matter of first impression under Kentucky law.

The plaintiff argues that it is inequitable for Travelers to be afforded a credit to the extent of the $50,000.00 per person liability limit of the Progressive policy rather than the amount actually paid to each claimant.

Dawson urges that the per-occurrence limit of $100,000.00 capped the amount which she could recover, as the $100,000.00 was to be spread out amongst fifty claimants. Thus she contends there was no room for negotiation. She reasons that this case differs from the single-claimant *Jamison* case, as Dawson claims that she was "forced to take [the $5,000.00] settlement" and that "[a]ll parties herein will agree that the [Dawson] was not properly compensated when she took $5,000 to settle her underlying case." DN 11-1. Dawson insists that Travelers will receive a

"windfall" if it is permitted a $50,000 threshold of liability with respect to each UIM claim it receives. Travelers seeks a ruling from the court that its liability, if any, to Dawson is limited to damages exceeding $62,443.25 in accordance with the clear and unambiguous language of the policy and the Kentucky statute.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The evidence of record does not support the foundational facts urged in Dawson's motion. The court will not grant relief based upon a factual scenario not present in the case. Argument of counsel does not constitute evidence in the case.

The per occurrence limit under the Progressive policy was $100,000.00. The adjuster indicated in his letters that he intended to pay out policy limits, but there is no evidence in the record that, in fact, all of the funds were paid out. There is nothing to indicate how many individuals actually made claims or how much was paid (beyond the two individuals identified in the two letters provided to the court). Yet Dawson would have the court proceed on the premise that the $100,000.00 was insufficient to pay all claims and that the full amount was paid out.

Dawson also contends that because of the $100,000.00 cap, she was "forced" to take the $5,000 settlement and that there was "no room for negotiation." Again, the evidence of record indicates that there was some discernment among claims, as the two letters submitted to the court evidence that one claimant received $5,000.00 while another received $1,500.00. There is nothing in the record to establish that Dawson was "forced" to take a settlement.

She boldly states that "all parties will agree that Dawson was not properly compensated" but there is no evidence in the record of any such agreement, nor is there any information about Dawson's claim, beyond the fact that she demanded policy limits.

The court can consider only the facts presented in the case, not a hypothetical case based upon conjecture and hyperbole. Therefore, the court has no basis in evidence to conclude that it would be inequitable to credit Travelers with the $50,000.00 per person liability limit in accordance with the Travelers policy and the Kentucky statute.

Further, it is a fallacious argument that Travelers will receive a "windfall" if it is permitted a credit for Progressive's per person liability limit toward individual claims for UIM benefits from claimants. Travelers is not withholding UIM benefits. Rather it has contracted to provide coverage

only for damages which exceed the limits of the Progressive policy. It is an excess carrier whose obligations as such are defined by statute.

Dawson is urging the application of a "damages less paid" formula rather than the "damages less limits" formula provided in the Kentucky statute. Kentucky did employ a "damages less paid" model prior to 1988, but the Kentucky legislature saw fit to amend the statute in 1988 to adopt the "damages less limits" provision. Travelers modeled its UIM endorsement after the current version of the statute, and undoubtedly based its premiums on the expected application of the "damages less limits" formula. Thus there can be no "windfall" to Travelers when it pays UIM claims in accordance with that coverage for which it received premiums.[2] Rather, the court's conclusion supports the purpose and policy underlying Kentucky's adoption of the "damages less limits" provision. As this case does not present facts justifying any different interpretation or application for the reasons stated, partial summary judgment will be granted as to Travelers and denied as to Dawson, and Travelers' liability, if any, for UIM benefits will be limited to that portion of Dawson's claim for D.M.'s total damages which exceed $62,442.25.

**IT IS SO ORDERED.**

---

[2] Further, Dawson's argument that it had a reasonable expectation of "damages less paid" coverage is without merit, as it is not coverage for which *Dawson* paid premiums. It was optional coverage purchased by JCBE under which Dawson may seek benefits.